UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KIRIAKI PAPASAKELARIOU, | | |
| Plaintiff, | | No. 25-cv-7088 |
| -against- | | (LAP) |
| CHANEL, INC., | | OPINION AND ORDER |
| Defendant. | | |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Chanel, Inc.'s motion to stay all proceedings and compel arbitration of all claims asserted by Plaintiff (see Complaint ("Compl."), [dkt. no. 1]) pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.[1]  Plaintiff opposes the motion.[2]  For the reasons set forth below, Defendant's Motion to Compel is GRANTED.

I.    **Background**

   **A. Factual Background**

As alleged in the Complaint, Plaintiff Kiriaki Papasakelariou ("Plaintiff") is a 53-year-old female.  (Compl. ¶ 1.)  Plaintiff was hired by Defendant in January 2019 as an Associate Director in

---

[1] (See Memorandum in Support of Motion to Stay ("Defendant's Mem."), dated Nov. 28, 2025 [dkt. no. 9]; Reply Memorandum in Support of Motion to Stay ("Defendant's Reply"), dated Jan. 16, 2026 [dkt. no. 18].)
[2] (See Plaintiff's Memorandum in Opposition to Motion ("Pl. Opp."), dated Dec. 19, 2025 [dkt. no. 15].)

Chanel's Bal Harbor boutique.  (Id. ¶ 15.)  In September 2021, Plaintiff was promoted to Director.  (See Ex. 2, [dkt. no 10-2].)  The letter confirming Plaintiff's promotion contains an arbitration provision and was signed by Plaintiff.  (Id. at 10-14.)  The arbitration agreement provides, inter alia, that "final and binding arbitration will be the sole and exclusive remedy for any . . . claim or dispute against Chanel."  (Id. at 13.)

In October 2023, Defendant terminated Plaintiff and, as alleged, replaced her with a substantially younger man.  (Compl. ¶ 31).  Thereafter, Plaintiff's counsel notified Defendant that she would be filing the operative complaint.  (See Ex. 5, [dkt no. 10-5].)  Defendant responded to inform Plaintiff's counsel that Plaintiff was bound by an arbitration agreement and urged Plaintiff several times to agree to a stay and referral to arbitration. Plaintiff's counsel declined, and instead filed this action.  (See Ex. 6, [dkt. no. 10-6]; ex. 7, [dkt. no. 10-7]; Defendant's Mem. at 6.)

**B. Procedural History**

On August 26, 2025, Plaintiff filed this action, asserting three claims for relief: age discrimination, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), the New York State Human Rights Law, N.Y. Exec. Law § 296(a) ("NYSHRL"), and the New York City Human Rights Law, NYC Admin. Code § 8-107 ("NYCHRL") (Count One); gender discrimination,

2

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the NYSHRL, and the NYCHRL (Count Two); and retaliation in violation of the Family and Medical Leave Act, 29 USC § 2614 et seq. ("FMLA") (Count Three).  (See Compl.)  Defendant has since filed a motion to stay all proceedings and compel arbitration.

## II.  **Legal Standard**

### A. Motion to Compel

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, a party may "petition the district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'"  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (quoting 9 U.S.C. § 4). "The question of whether the parties have agreed to arbitrate . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  Id. (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). This threshold question is "determined by state contract law principles."  Id.

3

When deciding motions to compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'"  Id. (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  Accordingly, the Court must consider "all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party."  Id. (internal quotations and citations omitted).  Because of the "'strong federal policy favoring arbitration as an alternative means of dispute resolution,' [the Court] resolve[s] any doubts concerning the scope of arbitrable issues 'in favor of arbitrability.'"  Daly v. Citigroup Inc., 939 F.3d 415, 421 (2d Cir. 2019) (quoting State of N.Y. v. Oneida Indian Nation of N.Y., 90 F.3d 58, 61 (2d Cir. 1996)).

The party moving to compel arbitration has the "initial burden of demonstrating that an agreement to arbitrate was made." Barrows v. Brinker Rest. Corp., 36 F.4th 45, 50 (2d Cir. 2022) (quoting Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010)). To create a genuine dispute as to the validity of the agreement, the burden then shifts to the non-movant to introduce some evidence substantiating his or her denial that an agreement had been made. Id.

4

III. **Discussion**

A. **Plaintiff Agreed to Arbitrate Her Claims**

A threshold question for this motion is whether Plaintiff agreed, as a condition of her employment, to arbitrate her future claims against Defendant.  Plaintiff contends that Defendant's failure to provide detailed evidence regarding the circumstances of Plaintiff's signing of the 2021 transfer letter, such as an audit trail, "calls into question the authenticity of the documents on which [Defendant] relies."  (Pl. Opp at 10).  This misstates Defendant's initial burden.  Under our Court of Appeals' precedent, Defendant met its evidentiary burden when it "produced an arbitration agreement that appears to bear [Plaintiff's] electronic signature."  Barrows, 36 F.4th at 50.

The burden thus shifts to Plaintiff to introduce some evidence substantiating her denial that an agreement had been made.  Barrows, 36 F.4th at 50.  A sworn, affirmative denial of signing the agreement can be sufficient to create such a fact issue, id., but Plaintiff has not done that here.  Rather, Plaintiff's sworn declaration states that she has "no recollection of having seen the arbitration agreement or agree[ing] to sign it."  (See Pl. Decl., [dkt. no. 15-2], ¶ 20.)  Absent a sworn forgery challenge or a claim that Defendant failed to show her the agreement,[3] mere

_____

[3] Plaintiff's Memorandum of Law argues that Plaintiff "disputes the authenticity of the signature" on the 2021 transfer letter.  See Pl. Opp. at 9.  However,

failure to recall signing the document, on its own, is insufficient to create a fact issue.  Brevard v. Credit Suisse, No. 23-CV-428 (LJL), 2024 WL 36991 at *5(S.D.N.Y. Jan. 3, 2024); Victorio, 2015 WL 2152703 at *11; Barrows,36 F.4th at 51.  As a result, "whether or not she remembers doing so, Plaintiff is nonetheless bound by the arbitration agreement[] that she signed."  Padro v. Citibank, N.A., No. 14-CV-2986 (NGG) (LB), 2015 WL 1802132 at *5 (E.D.N.Y. Apr. 20, 2015).

## B. The Potential 2022 Superseding Agreement

Plaintiff has directed the Court's attention to the termination letter in which Defendant purportedly references a 2022, rather than 2021, transfer letter.  (Pl. Opp. at 7-10.)  The relevant portion of the termination letter reads: "We are writing regarding your termination . . . in accordance with the letter of employment and additional covenants . . . dated September 24, 2021, that you signed on September 25, 2022."  (Ex. 8, [dkt. no. 10-8], at 2.)

Defendant has since clarified that there is no 2022 transfer letter and that the reference to a 2022 agreement was a typo that was intended to refer to the 2021 letter.  (See Ex. 7; see also Defendant's Mem. at 10 n. 3.)  Nonetheless, Plaintiff argues that this error "at least raises the possibility that a second, later-

---

the Court looks only to the Plaintiff's declaration as evidence, which lacks any claim of misappropriation.  See Pl. Decl.

signed or otherwise edited document may govern the relationship between the parties, including as to arbitration and arbitrability of the claims." (Pl. Opp. at 7.) The Court disagrees.

First, the language of the termination letter itself confirms Defendant's claim that any reference to a 2022 agreement was inadvertent. Indeed, the letter reads "in accordance with the letter . . . dated September 24, 2021, that you signed on September 25, 2022." By first identifying the 2021 letter "that [Plaintiff] signed," it is clear this sentence intended to refer to the 2021 agreement. This conclusion is further supported by the fact that the two referenced dates are just one day apart. In sum, it is facially apparent that the reference to 2022 was a typo.

Plaintiff takes further issue with the fact that Defendant did not attach the 2021 transfer letter to the termination email. (Pl. Opp. at 4.) This entire strand of argument is irrelevant because there is no requirement that Defendant identify or attach the exact arbitration provision at the time of termination. Plaintiff has produced absolutely no evidence of a subsequent agreement that supersedes the 2021 transfer letter. Accordingly, the Court determines that the 2021 transfer letter's arbitration agreement is binding on the parties.

### C. The EDR Policy in the Employment Portal & Handbook

As explained above, the Court finds that Plaintiff validly agreed to arbitrate her claims by signing the 2021 transfer letter.

That alone is reason enough to compel arbitration.  Even if the 2021 transfer letter did not exist, however, Plaintiff independently agreed to arbitrate her claims via Defendant's global Employment Dispute Resolution Policy ("EDR"), which was provided to its employees in the employee handbook as well as on the employee portal.  (Def. Mem. at 5.)

Continued employment after receipt of notice of a company's alternative dispute resolution policy constitutes consent to that policy.  Manigault v. Macy's E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009) (citing Bottini v. Lewis & Judge Co., 621 N.Y.S.2d 753, 754 (1995)).  Here, Defendant has produced evidence that Plaintiff acknowledged the EDR policy-effective January 12, 2020-via the portal on January 15, 2020.  (Ex. 4, [dkt. no. 10-4].)  The EDR policy outlined in the portal is identical to the one contained in the signed 2021 transfer letter.  (Def. Mem. At 5; compare also Ex. 2 with Ex. 3, [dkt. no. 10-3].)

Plaintiff's declaration, on the other hand, merely states that she "do[es] not know if [she] ever received or signed an employee handbook that contained an Employee Dispute Resolution Policy." (Pl. Decl. ¶ 23.)  As with Plaintiff's failure to recall seeing or signing the 2021 transfer letter, this purported lack of recollection is insufficient to create an issue of fact as to the validity of the EDR Policy.  See Brevard, 2024 WL 36991 at *5.

Thus, the EDR Policy would provide an independent basis for arbitration.

### D. Unconscionability

In the alternative, Plaintiff argues that she should not be bound to the validly-executed arbitration agreement because it is unconscionable.  (Pl. Opp. at 15-16.)  Specifically, Plaintiff takes issue with the provision of the transfer letter that subjected her employment to "such applicable Company policies and procedures as now in effect and as may be amended, changed, or discontinued at any time for any reason at the complete discretion of Chanel and such additional rules and regulation as may be adopted or amended at the complete discretion of Chanel."  (Id.; Ex. 2 ¶ 11.)  Plaintiff argues that, because Defendant retained the ability unilaterally to alter the agreement, the contract may be considered illusory and unenforceable.  (Pl. Opp. at 15.)

Again, the Court disagrees.  Defendant seeks to "enforce the arbitration policy as it existed at the time the parties agreed to it."  Gilbert v. Dell Techs., Inc., 415 F. Supp. 3d 389, 398 (S.D.N.Y. 2019).  Accordingly, "[i]t is not unconscionable to require the plaintiff to arbitrate in accordance with the terms of the arbitration policy that the plaintiff agreed to and which the defendant seeks to enforce without any changes."  Id. at 399.

Further, even if this Court were to find the unilateral change provision unconscionable, due to the "pro-arbitration policy of

9

the FAA, [this provision] could be waived . . . or not enforced without affecting the validity of the arbitration agreement." Id. (internal citations and quotations omitted); see also Worthington v. JetSmarter, Inc., No. 18 CIV. 12113 (KPF), 2019 WL 4933635 at *8 (S.D.N.Y. Oct. 7, 2019) (enforcing an arbitration agreement bound by Florida law because the Plaintiffs, despite "titl[ing] their arguments as challenges to the arbitration provision specifically" in fact made arguments "regarding [the] unconscionability and illusoriness [of the contract] as a whole."). Accordingly, while Plaintiff may "raise such arguments [regarding unconscionability] in arbitration," Plaintiff "may not use these arguments to avoid arbitration in the first instance." Id.

### E. Sanctions

With the motion granted, the Court turns to Defendant's request that the Court sanction Plaintiff for filing this lawsuit while on notice of the arbitration provision. Although the Court squarely rejects Plaintiff's arguments to avoid arbitration, the Court will decline to award sanctions. To be sure, Plaintiff's arguments to avoid arbitration were flimsy at best. But given that Plaintiff's client appeared to dispute the existence of a valid arbitration agreement, Plaintiff's counsel had a non-frivolous basis for making those arguments and bringing this

action.    See Fed. R. Civ. P. 11(c).    Sanctions are therefore unwarranted.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to stay all proceedings and compel arbitration is GRANTED.

The Clerk of the Court shall close docket number 8, enter judgment, and terminate this case.

**SO ORDERED.**

Dated:    May 12, 2026
New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

11